## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| LOUIS MARTIN, | Case No.: 2:24-cv-1071 |
| Plaintiffs, | |
| v. | **COMPLAINT AND** |
| | **DEMAND FOR JURY TRIAL** |
| EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, and CREDIT ONE BANK, N.A., | |
| Defendants. | |

Louis Martin ("Plaintiff" or "Mr. Martin") brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union") (collectively the "Credit Bureau Defendants"), and Credit One Bank, N.A. ("Credit One") (all Defendants collectively, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff, an identity theft victim, brings this action against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. Seq.*

2.      More than twenty million people, just under 10% of all adult

Americans, are victims of identity theft each year.[1]  Federal Law requires that each consumer reporting agency ("CRA") protect victims by taking steps to remove fraudulent information from victims' reports, to ensure that only third parties with permissible purposes see victims' reports and to implement fraud alerts and security freezes at victims' requests.  This lawsuit arises from Defendant's refusal to comply with these statutory requirements and resulting failure to protect Plaintiff from identity theft and identity theft consequences.

3.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

4.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics.  April 2021, NCJ 256085.

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
***Complaint and Demand for Jury Trial***

inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

5.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

6.      These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

7.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

8.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

9.     The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

10.     The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

11.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer

disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

12.    In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." See 15 U. S.C. § 1681(a)(4).

13.    The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

14.    Plaintiff's claims arise out of the Defendants plainly deficient reinvestigations considering Plaintiff's multiple disputes and repeated notice that he was a victim of identity theft.

15.    Specifically, an unauthorized individual stole and used Plaintiff's Credit One credit card information to make multiple unauthorized purchases totaling $1,422.25 without Plaintiff's authorization or consent.

16.    Plaintiff filed a police report with the Lee County Sheriff's Office, an

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

FTC Affidavit, and a Victim Responsibility Affidavit.

17.   Plaintiff, upon realization that he is a victim of identity theft, immediately alerted Defendant Credit One of the unauthorized transactions.

18.   Nonetheless, Defendant Credit One has continued to attempt to collect the money from Plaintiff, flatly rejecting Plaintiff's claims of identity theft and stating that Plaintiff was responsible for the unauthorized transactions.

19.   To date, Defendant Credit One has refused to conduct a reasonable investigation of Plaintiff's claim of identity theft and that the charges were fraudulent, and has instead continued to attempt to collect the balance that was incurred as a result of identity theft.

20.   Additionally, Defendant Credit One has reported the fraudulent charges to the Credit Bureau Defendants despite being aware that the fraudulent charges were not made by Plaintiff, but were the result of theft of Plaintiff's identity, in violation of the Fair Credit Reporting Act ("FCRA").

21.   Plaintiff has sent identity theft notifications, which include a police report and the FTC ID Theft Affidavit to establish that he did not make the fraudulent purchases or otherwise authorize anyone to make those purchases to all of the Defendants.

22.   Despite receiving notice that the Credit One Account charges being reported to Plaintiff's Equifax credit file and/or report was the product of identity

theft, Defendant Equifax has failed to suppress or remove or block the identity theft information from Plaintiff's credit file and/or reports, in violation of the FCRA, 15 U.S.C. § 1681 *et. seq.*

23.    Despite receiving notice that the Credit One Account charges being reported to Plaintiff's Experian credit file and/or report was the product of identity theft, Defendant Experian has failed to suppress or remove or block the identity theft information from Plaintiff's credit file and/or reports, in violation of the FCRA, 15 U.S.C. § 1681 *et. seq.*

24.    Despite receiving notice that the Credit One Account charges being reported to Plaintiff's Trans Union credit file and/or report was the product of identity theft, Defendant Trans Union has failed to suppress or remove or block the identity theft information from Plaintiff's credit file and/or reports, in violation of the FCRA, 15 U.S.C. § 1681 *et. seq.*

25.    Additionally, despite, and upon information and belief, receiving at least one automated credit dispute verification ("ACDV") from Defendant Equifax, Defendant Credit One has failed to properly reinvestigate Plaintiff's dispute, and amend its reporting accordingly.

26.    Additionally, despite, and upon information and belief, receiving at least one automated credit dispute verification ("ACDV") from Defendant Experian, Defendant Credit One has failed to properly reinvestigate Plaintiff's dispute, and

amend its reporting accordingly.

27.     Additionally, despite, and upon information and belief, receiving at least one automated credit dispute verification ("ACDV") from Defendant Trans Union, Defendant Credit One has failed to properly reinvestigate Plaintiff's dispute, and amend its reporting accordingly.

28.     Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i, for failing to block the identity theft items as disputed and supported by Plaintiff in violation of the FCRA, 15 U.S.C. § 1681c-2.

29.     Further, Plaintiff also brings claims against the Furnisher, Defendant Credit One , for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of FCRA, 15 U.S.C. § 1681s-2b.

30.     As part of this action, Plaintiff seeks actual, statutory, and punitive

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

damages, costs, and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., as described herein.

## I.  <u>JURISDICTION AND VENUE</u>

31.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. See 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants regularly transacts business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

33.     Louis Martin ("Plaintiff" or "Mr. Martin") is a natural person residing in North Fort Myers, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

34.     Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309, and can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners,

Georgia 30092, and is authorized to do business in the State of Florida, including within this District.

35.    Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

36.    The information that Defendant Equifax collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans.  Defendant Equifax also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

37.    Defendant Equifax collects and maintains such information about consumers, whether consumers like it or not.  Consumers do not have a choice as to whether Defendant Equifax collects and maintains information about them.  Not only that, but consumers cannot remove information that Defendant Equifax collects and maintains about them from the Equifax database.  Further, Defendant Equifax sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Defendant Equifax

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

sold.

38.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and can be served through its registered agent, CT Corporation System, located at 330 North Brand Boulevard, Glendale, California 91203, and is authorized to do business in the State of Florida, including within this District.

39.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b). Defendant Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

40.     The information that Defendant Experian collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans.  Defendant Experian also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

41.     Defendant Experian collects and maintains such information about consumers, whether consumers like it or not.  Consumers do not have a choice as to

whether Defendant Experian collects and maintains information about them.  Not only that, but consumers cannot remove information that Defendant Experian collects and maintains about them from the Experian database.  Further, Defendant Experian sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Defendant Experian sold.

42.    Defendant Trans Union, LLC ("Trans Union") is a corporation with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703, and is authorized to do business in the State of Florida, including within this District.

43.    Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and is a "person" as defined by 15 U.S.C. § 1681a(b).  Defendant Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

44.    The information that Defendant Trans Union collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans.    Defendant Trans Union also collects

consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

45.    Defendant Trans Union collects and maintains such information about consumers, whether consumers like it or not.  Consumers do not have a choice as to whether Defendant Trans Union collects and maintains information about them.  Not only that, but consumers cannot remove information that Defendant Trans Union collects and maintains about them from the Trans Union database.   Further, Defendant Trans Union sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Defendant Trans Union sold.

46.    Defendant Credit One Bank, N.A. ("Credit One") is a national bank with a principal place of business and registered agent located at 6801 S Cimarron Rd, Las Vegas, NV 89113 and is authorized to do business in the State of Florida, including within this District.

47.    Defendant Credit One is a "Furnisher" as defined in 12 CFR 1022.41 and is a "person" as defined by 15 U.S.C. § 1681a(b).  Defendant Credit One regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.   A data furnisher, such as Defendant Credit One, is an entity that reports information about consumers to consumer reporting agencies (CRAs), which may include credit bureaus, tenant

screening companies, check verification services, and medical information services, etc. Like CRAs and data users, data furnishers have legal obligations and rules that must be upheld & followed pursuant to 15 U.S.C. § 1681s-2b of the FCRA.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

48.    The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

49.    The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See 15 U.S.C. § 1681(a).

50.    Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. See 15 U.S.C. § 1681(b).

51.    Congress also recognized that CRAs such as the Credit Bureau Defendants "have assumed a vital role in assembling and evaluating consumer credit

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

and other information on consumers."  15 U.S.C. § 1681(a)(3).  Therefore, Congress

determined that there "is a need to insure that consumer reporting agencies exercise

their grave responsibilities with fairness, impartiality, and a respect for the

consumer's right to privacy."   15 U.S.C. § 1681(a)(4).

52.    For that reason, Congress ensured that the FCRA also provides special

protections for victims of identity theft.

53.    The first form of protection is the "block."  When a consumer identifies

any information in their credit file that is the product of identity theft, the CRA must

block (delete) the reporting of that information within four business days, provided

the consumer submits:

    a.  Appropriate proof of the identity of the consumer;

    b.  A copy of an identity theft report;

    c.  The identification of such information by the consumer; and,

    d.  A statement by the consumer that the information is not information

       relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).15 U.S.C. § 1681c-2(a).

54.    The second form of protection the FCRA provides for identity theft

victims is the "fraud alert."

55.    Specifically, upon request of the consumer, a CRA must place an

"initial fraud alert" in the file of that consumer, and provide that alert along with any

credit score generated in using that file, for one year beginning on the date of the request. Unless one year has passed, the CRA can only remove the alert if the consumer requests removal and the CRA receives "appropriate proof of the identity of the requester." 15 U.S.C. § 1681c-1(a)(1).

56.    The third form of protection the FCRA provides for identity theft victims is a "security freeze," which a consumer can request from nationwide CRAs such as the Defendants here.

57.    A security freeze prohibits a CRA from disclosing the contents of a consumer report that is subject to the freeze to any person requesting the consumer report.2  15 U.S.C. § 1681c-1(i)(1).  Stated otherwise, if a consumer's report is frozen, a CRA will not be able to sell it to creditors assessing credit applications from identity thieves using an affected consumer's identity.

58.    Once placed, a security freeze does not expire.  A CRA can remove a security freeze only at "the direct request of the consumer," or if it finds that the freeze "was placed due to a material misrepresentation of fact by the consumer." 15 U.S.C. § 1681c-1(i)(3)(A).  Furthermore, when a consumer requests removal, the CRA must first obtain "proper identification" from the consumer before removing the freeze." 15 U.S.C. § 1681c-1(i)(3)(C).

_____

2 Certain statutorily exempt entities can still request and receive a frozen report.  See 15 U.S.C. § 1681c-1(i)(4).  But those exemptions do not apply to the matter at hand.

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

59.     The fourth and final form of protection the FCRA provides for identity theft victims is that even in the absence of a security freeze, a CRA may only release a consumer report to a person "which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished..." 15 U.S.C. § 1681b(a). When a credit transaction is not initiated by the consumer, a CRA may only release the consumer's report with the consumer's authorization or if the user is making a firm offer of credit.  15 U.S.C. § 1681b(c).  No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a permissible purpose.  15 U.S.C. § 1681e(a).

60.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

61.     Similarly, the FCRA also imposes a duty upon the Furnishers, such as Defendant Credit One, to reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. (15 U.S.C. § 1681s-2b).

62.     The FCRA provides consumers with a private right of action against

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

consumer reporting agencies, such as the Credit Bureau Defendants, and data furnishers such as Defendant Credit One, that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## FACTUAL ALLEGATIONS
### *Identity Theft Incident*

63.    Plaintiff is an elderly retired consumer and lives a modest life, in Florida.

64.    On or about March 13, 2024, a fraudster made two unauthorized charges on Plaintiff's Credit One credit card totaling $1,422.25. One transaction in the amount of $653.46 and the other transaction in the amount of $768.79.

65.    On or about March 13, 2024, Plaintiff received a text message notification from Defendant Credit One asking him to confirm two transactions that were made through his Credit One credit card.

66.    At the time, Plaintiff was distracted and mistakenly confirmed the two unauthorized charges by responding to the text message received from Credit One.

### **Plaintiff Disputes to Defendant Credit One March 2024**

67.    Shortly after Plaintiff confirmed the two unauthorized charges via text message with Defendant Credit One, Plaintiff also received a phone call from Defendant Credit One's representative asking again about the two unauthorized charges.

68.    Plaintiff panicked when he realized he had mistakenly approved of the

two unknown and unauthorized transactions.

69.     During that same phone call, Plaintiff disputed the two unauthorized charges.

70.     Plaintiff reasonably believes that an unknown fraudster was able to obtain Plaintiff's Credit One Credit Card information and made a total of $1,422.25 in purchases on Plaintiff's Credit One Credit Card.

71.     Further, Plaintiff discovered that the charges were made in India.

72.     Plaintiff did not authorize another consumer to use Plaintiff's Credit One Credit Card in India, or anywhere else.

73.     Plaintiff did not initiate, authorize or benefit from the purchases made on or about March 13, 2024.

74.     On or about March 17, 2024, Defendant Credit One temporarily credited the total amount for the unauthorized charges.

**Defendant Credit One's Unreasonable Dispute Investigation March 2024**

75.     On or about March 28, 2024, Defendant Credit One communicated to Plaintiff that it had completed its investigation of Plaintiff's fraud claim and found that Plaintiff was responsible for the unauthorized charges.

76.     Further, Defendant Credit One immediately reversed its previously applied credits to Plaintiff's account.

77.     Plaintiff was utterly confused and dismayed at Defendant Credit One's

response and clearly sham investigation.

78.    Upon information and belief, the only investigation Defendant Credit One conducted was into whether the charges were made using Plaintiff's credit card information.

79.    Upon information and belief, Defendant Credit One did not conduct any investigation as to whether the unauthorized charges at issue were fraudulent.

80.    Defendant Credit One failed to produce any evidence on which it relied in support of its decision to deny Plaintiff's dispute.

81.    In sum, Defendant Credit One re-billed Plaintiff's Credit One Credit Card Account for a total of $1,422.25

**Plaintiff Submits a Second Direct Dispute to Defendant Credit One April 2024**

82.    Plaintiff did not authorize any portion of the $1,422.25 charges applied to his Credit One Credit Card Account.

83.    Plaintiff reasonably believes that a fraudster located in India used his Credit One Credit Card to make the disputed unauthorized purchases.

84.    On or about April 27, 2024, Plaintiff submitted a dispute via email to Defendant Credit One concerning the unauthorized charges made to his Credit One Credit Card.

85.    Plaintiff specifically disputed the $1,422.25 in unauthorized charges applied to his Credit One Credit Card.

86.     That same day, Plaintiff received an email from Defendant Credit One confirming receipt of his dispute.

**Defendant Credit One's Unreasonable Dispute Investigation May 2024**

87.     On or about May 9, 2024, Defendant Credit One responded to Plaintiff's April 2024 dispute by referencing the March 2024 dispute, informing Plaintiff that they have 'determined that no error has occurred' pertaining to Plaintiff's Credit One Credit Card Account.

88.     Plaintiff was dismayed and frustrated by Defendant Credit One's response.

89.     Upon information and belief, Defendant Credit One did not conduct a further investigation.

90.     Defendant Credit One failed to produce any evidence on which it relied in support of its decision to deny Plaintiff's dispute.

91.     Plaintiff was in disbelief and utterly devastated.

**Plaintiff Submits a Third Direct Dispute to Defendant Credit One May 2024**

92.     Plaintiff, worried that he was still being made responsible for the unauthorized charges made on his Credit One credit card decided to dispute with Defendant Credit One again.

93.     On or about May 11, 202, Plaintiff submitted a second dispute to Defendant Credit One via email and disputed the unauthorized charges made to his

Credit One Credit Card.

94.    Plaintiff specifically disputed the $1,422.25 in unauthorized charges applied to his Credit One Credit Card.

**Defendant Credit One's Unreasonable Dispute Investigation May 2024**

95.    Defendant Credit One again responded to Plaintiff's dispute by referencing the March 2024 dispute and stating that the charges were valid .

96.    Plaintiff was dismayed and frustrated by Defendant Credit One's lack of response to his valid disputes.

97.    Plaintiff was in disbelief and utterly devastated.

**Plaintiff Files a Police Report Regarding the Identity Theft**

98.    After several unsuccessful attempts to resolve the unauthorized charges directly with Defendant Credit One, Plaintiff began to feel hopeless and unheard by Defendant Credit One.

99.    On June 6, 2024, Plaintiff went to Lee County Sheriff's Office to file a police report concerning the identity theft.

100.   On the same day, Plaintiff also filed a Victim Responsibility Affidavit to help support his claims that he was, in fact, a victim of identity theft.

101.   On or about June 7, 2024, Plaintiff received an email from the Lee County Sheriff's Office informing Plaintiff that his case was being forwarded to the Federal Bureau of Investigation due to the fact that the unauthorized charges were

made outside of the United States.

**Plaintiff Submits a Fourth Direct Dispute to Defendant Credit One June 2024**

102.   Plaintiff, knowing that he now has more than enough proof to help support his claim that he is a victim of identity theft, decided to dispute again with Defendant Credit One.

103.   On or about June 21, 2024, Plaintiff submitted a fourth dispute to Defendant Credit One via email and disputed the unauthorized charges made to his Credit One Credit Card.

104.   Plaintiff specifically disputed the $1,422.25 unauthorized charges applied to his Credit One Credit Card.

**Credit Bureau Defendants Report the Inaccurate Information**

105.   Plaintiff is a responsible consumer and did his best to maintain good standing when it comes to his consumer profile

106.   Worried that his situation with Defendant Credit One would ruin his creditworthiness, Plaintiff decided to view his consumer reports from the Credit Bureau Defendants.

107.   On or about July 3, 2024, Plaintiff obtained copies of his consumer reports from the Credit Bureau Defendants.

108.   Plaintiff was shocked to see that the balance being reported concerning his Credit One tradeline included the disputed amount of over $1,400 in his total

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

balance.

109.   It was also at this time that Plaintiff realized that in his email disputes he had miscalculated and had been stating the wrong total amount for the two fraudulent charges.

**Plaintiff Files an FTC Identity Theft Report**

110.   Plaintiff grew weary of the far-reaching impacts of Defendant Credit One's refusal to reasonably reinvestigate his disputes and now, the Credit Bureau Defendants' failure to assure the maximum possible accuracy of the information they were reporting about Plaintiff.

111.   Further, Plaintiff was fearful that the unauthorized transactions which were the product of identity theft, would continue to plague him and his credit file.

112.   On or about July 9, 2024, Plaintiff filed an FTC Identity Theft Report with the Federal Trade Commission.

**Defendant Credit One's Unreasonable Dispute Investigation July 2024**

113.   On or about July 17, 2024, Plaintiff received an email response from Defendant Credit One informing Plaintiff that it had completed its investigation of Plaintiff's fraud claim and found that Plaintiff was responsible for the unauthorized charges.

114.   Plaintiff was utterly devastated at Defendant Credit One's response and clearly sham investigation.

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
***Complaint and Demand for Jury Trial***

115.   Upon information and belief, the only investigation Defendant Credit One conducted was into whether the unauthorized charges were made to Plaintiff's Credit One charge card..

116.   Upon information and belief, Defendant Credit did not conduct any investigation as to whether the unauthorized charges at issue were fraudulent.

117.   Defendant Credit One failed to produce any evidence on which it relied in support of its decision to deny Plaintiff's dispute.

## Plaintiff's Dispute to the Credit Bureau Defendants

118.   Realizing that Defendant Credit One would continue to report inaccurately that Plaintiff was responsible for the unauthorized charges to the Credit Bureau Defendants, Plaintiff determined that he needed to escalate the issue to prevent further damage to his credit files and reports.

119.   On or about July 11, 2024, Plaintiff disputed the charges on the Credit One Credit Card Account with the Credit Bureau Defendants.

120.   Plaintiff included with his dispute a copy of his Credit One Bank statement and the FTC Identity Theft Report concerning the fraudulent charges, a copy of his Social Security card and Driver's license to verify his identity, and a copy of his bank statement to verify his address.

121.   Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute, including a copy of the FTC Identity

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

Theft Report.

122.   Plaintiff requested that the identity theft information be blocked from his credit file.

## Defendant Equifax's Unreasonable Dispute Reinvestigation

123.   Unfortunately, Plaintiff's first dispute was lost in transit, according to the United States Postal Service ("USPS".)

124.   However, on or about July 26, 2024, Defendant Equifax sent Plaintiff a letter informing Plaintiff that the documents he submitted were 'illegible' and that they would need 'enlarge photocopies' of the documents he had submitted.

125.   Curiously still and on that same day, Defendant Equifax sent Plaintiff a dispute response letter wherein they informed Plaintiff that they would not be blocking the disputed information which was the product of the identity theft.

126.   Upon information and belief, Defendant Equifax sent Defendant Credit One an automated credit dispute verification ("ACDV") pursuant to Plaintiff's July 2024 dispute to Defendant Equifax.

127.   Upon information and belief, Defendant Credit One received Defendant Equifax's ACDV and did not adequately reinvestigate Plaintiff's dispute.

128.   Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff.

129.   Defendant Equifax failed to reinvestigate Plaintiff's July 2024 dispute

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

and failed to block the identity theft information.

130.   Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

131.   Defendant Equifax violated 15 U.S.C.§1681c-2 by failing to block the identity theft information.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

132.   On or about July 22, 2024, Defendant Experian received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

133.   On August 6, 2024, Plaintiff received a response from Defendant Experian in response to Plaintiff's dispute.

134.   Defendant Experian acknowledged receipt of Plaintiff's request that information be blocked due to identity theft and to check his credit report online.

135.   Defendant Experian included a summary of the results with its response.   The Credit one account was reported without any update despite Plaintiff's clear dispute that he was an identity theft victim and that someone had used his credit card without his permission.

136.   Upon information and belief, Defendant Experian sent Defendant Credit One an automated credit dispute verification ("ACDV") pursuant to

Plaintiff's July 2024 dispute to Defendant Experian.

137.   Upon information and belief, Defendant Credit One received Defendant Experian's ACDV and did not adequately reinvestigate Plaintiff's dispute.

138.   Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

139.   Defendant Experian failed to reinvestigate Plaintiff's July 2024 dispute and failed to block the identity theft information.

140.   Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

141.   Defendant Experian violated 15 U.S.C.§1681c-2 by failing to block the identity theft information.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

142.   On or about July 22, 2024, Defendant Trans Union received Plaintiff's dispute and request that identity theft information be blocked from his credit file.

143.   On July 25, 2024, Defendant Trans Union issued dispute results to Plaintiff wherein it communicated that the disputed information, which was the product of identity theft, would not be blocked.

144.   Defendant Trans Union further stated that it would start an investigation into Plaintiff's dispute.

145.   Upon information and belief, Defendant Trans Union sent Defendant Credit One an automated credit dispute verification ("ACDV") pursuant to Plaintiff's July 2024 dispute to Defendant Trans Union.

146.   Upon information and belief, Defendant Credit One received Defendant Trans Union's ACDV and did not adequately reinvestigate Plaintiff's dispute.

147.   On or about August 6, 2024, Plaintiff received dispute results from Defendant Trans Union stating that the information was verified as accurate.

148.   Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

149.   Defendant Trans Union failed to reinvestigate Plaintiff's July 2024 dispute and failed to block the identity theft information.

150.   Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

151.   Defendant Trans Union violated 15 U.S.C.§1681c-2 by failing to block the identity theft information.

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
***Complaint and Demand for Jury Trial***

## The Credit Bureau Defendants' Method for Considering
## Consumer Credit Report Disputes

152.   The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

153.   The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

154.   That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."

155.   It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

156.   Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

157.   Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV")

electronic form.

158.   The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

159.   These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

160.   Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

161.   The data furnishers, like Defendants Credit One, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. See 15 U.S.C. § 1681s-2(b).

162.   Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Credit One's Unreasonable Dispute Reinvestigation July 2024**

163.   Plaintiff continued to plead his case to Defendant Credit One and dispute the unauthorized charges on his Credit One Card made in an entirely different country which Plaintiff was not in at the time the charges were made.

164.   Upon information and belief, Defendant Credit One failed to adequately review all of the information provided to it by Plaintiff.

165.   Upon information and belief, Defendant Credit One verified the disputed information as accurate in response to Defendant Equifax's ACDV.

166.   Upon information and belief, Defendant Credit One verified the disputed information as accurate in response to Defendant Experian's ACDV.

167.   Upon information and belief, Defendant Credit One verified the disputed information as accurate in response to Defendant Trans Union's ACDV.

168.   Defendant Credit One violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

**Plaintiff's Dispute to Defendant Equifax August 2024**

169.   Believing that Plaintiff's first dispute to Defendant Equifax was lost in the mail Plaintiff sent a second dispute to Defendant Equifax on or about August 6, 2024.

170.   Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute, including a copy of the FTC Identity Theft Report.

171.   Plaintiff included with his dispute a copy of his Credit One Bank statement and the FTC Identity Theft Report concerning the fraudulent charges, a copy of his Social Security card and Driver's license to verify his identity, and a copy of his bank statement to verify his address.

172.   Plaintiff requested that the identity theft information be blocked form his credit file.

### Credit One Revokes Plaintiff's Credit Card Account August 2024

173.   On or about August 20, 2024, Defendant Credit One issued a letter to Plaintiff wherein it communicated that it was suspending Plaintiff's account.

174.   Specifically, Defendant Credit One stated that it was suspending Plaintiff's account until it could verify the account activity with Plaintiff.

175.   Plaintiff was completely flabbergasted by Defendant Credit One's decision to suspend his account.

176.   Specifically, since the said activity was a product of identity theft which he has repeatedly disputed with Defendant Credit One.

//

*Louis Martin V. Experian Information
Solutions, Inc., Equifax Information
Services, LLC, Trans Union LLC, And
Credit One Bank, N.A;*
***Complaint and Demand for Jury Trial***

**Defendant Equifax's Unreasonable Dispute Reinvestigation August 2024**

177.    On or about August 21, 2024, Defendant Equifax issued dispute results to Plaintiff stating that the information had been verified as accurate. Despite Plaintiff's clear dispute that he was an identity theft victim and that someone had used his credit card without his permission and despite having enclosed an FTC ID Theft Report, Defendant Equifax's response was that it will not be blocking the disputed information which was the product of an identity theft.

178.    Upon information and belief, Defendant Equifax sent Defendant Credit One an automated credit dispute verification ("ACDV") pursuant to Plaintiff's August 2024 dispute to Defendant Equifax.

179.    Upon information and belief, Defendant Credit One received Defendant Equifax's ACDV and did not adequately reinvestigate Plaintiff's dispute.

180.    Upon information and belief, Defendant Equifax failed to issue dispute results to Plaintiff.

181.    Defendant Equifax failed to adequately review all of the information provided to it by Plaintiff.

182.    Defendant Equifax failed to reinvestigate Plaintiff's August 2024 dispute and failed to block the identity theft information.

183.    As of the time of the filing of this complaint, Defendant Equifax's credit file continues to show the fraudulent charges, despite the fact that Plaintiff provided

a copy of his FTC ID Theft Report.

184.   As of the time of the filing of this complaint, Defendant Equifax continues to publish inaccurate credit reports to third parties that show the fraudulent charges, despite the fact that Plaintiff provided a copy of his FTC ID Theft Affidavit.

185.   Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

186.   Defendant Equifax violated 15 U.S.C.§1681c-2 by failing to block the identity theft information.

**Defendant Credit One's Unreasonable Dispute Reinvestigation August 2024**

187.   Upon information and belief, Defendant Credit One verified the disputed information as accurate in response to Defendant Equifax's ACDV.

188.   As of the time of the filing of this complaint, Plaintiff reasonably believes that Defendant Credit One continues to furnish inaccurate information to the Credit Bureau Defendants – namely that Plaintiff is responsible for charges that were the product of fraud and identity theft.

189.   195.   Defendant Credit One violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that

the disputed charges were the product of identity theft.

**Plaintiff Submits a Direct Dispute to Defendant Credit One September 2024**

190.   Plaintiff, now feeling hopeless and unheard by Defendants, decided to submit yet another dispute directly to Defendant Credit One.

191.   Plaintiff specifically disputed the over $1,400 in unauthorized charges applied to his Credit One Credit Card.

**Defendant Credit One's Unreasonable Dispute
Reinvestigation September 2024**

192.   On September 24, 2024, Defendant Credit One communicated to Plaintiff that it had completed its investigation of Plaintiff's fraud claim and found that Plaintiff was responsible for the unauthorized charges.

193.   Specifically, Defendant Credit One informed Plaintiff that 'no error has occurred' concerning his Credit One Credit Card Account.

194.   As of the time of the filing of this complaint, Plaintiff reasonably believes that Defendant Credit One continues to furnish inaccurate information to the Credit Bureau Defendants – namely that Plaintiff is responsible for charges that were the product of fraud and identity theft.

**PLAINTIFF'S DAMAGES**

195.   Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft and that there were fraudulent charges on his Credit One Credit Card Account.

*Louis Martin V. Experian Information
Solutions, Inc., Equifax Information
Services, LLC, Trans Union LLC, And
Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

196.   Plaintiff filed a police report and contacted Defendant Credit One to notify them of the fraud so that they would close the account.

197.   Plaintiff repeatedly followed up and disputed with Defendant Credit One concerning the unauthorized charges made on his Credit One Credit Card Account.

198.   Plaintiff filed an FTC ID Theft Affidavit.

199.   Plaintiff disputed with Defendants Equifax, Experian, and Trans Union.

200.   Plaintiff identified himself as an identity theft victim and requested an Identity Theft Block be applied to his credit file and that a Fraud Alert be added to his credit file.

201.   Defendant Credit One has repeatedly denied Plaintiff's identity theft and fraudulent charges claims – at all times failing to provide Plaintiff with any of the investigation materials it has reviewed in coming to that determination.

202.   The Credit Bureau Defendants have denied Plaintiff's identity theft and fraudulent charges claims – at all times failing to provide Plaintiff with any of the investigation materials they have reviewed in coming to that determination.

203.   As a direct result of Defendant Credit One's ardent refusal to remove the disputed debt and to stop furnishing the same to the Credit Bureau Defendants, Defendant Credit One has continued to saddle Plaintiff with a debt which was the product of fraud and identity theft.

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

204. Further, as a direct result of Defendant Credit One's verification of the disputed debt to the Credit Bureau Defendants, Defendant Credit One has continued to saddle Plaintiff with a debt which was the product of fraud and identity theft.

205. As a direct result of the Credit Bureau Defendants' ardent refusal to block the disputed information, the Credit Bureau Defendants have continued to saddle Plaintiff with a debt that was the product of fraud and identity theft.

206. Due to Defendants' ardent refusal to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which he incurred attorney's fees.

207. Further, and due to Defendants' inexplicable refusal to remove and/or block information that is the product of identity theft and fraud from an identity theft victim's credit file, Plaintiff expended countless hours disputing the same with the Defendants.

208. Defendants' conduct disrupted Plaintiff's life and impacted his well-being.

209. Defendants' conduct caused Plaintiff's Credit One Credit Card Account to be suspended.

210. It has taken him an incredible amount of time to document the events, secure his credit, and track down supporting documents, all of which affected his ability to spend time working and improving his home.

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

211.   In addition to impacting his income, dealing with the consequences of Defendants' conduct has taken Plaintiff away from time he would otherwise have spent with his friends and family.  It has taken a toll on Plaintiff.

212.   Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety.  Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate his disputes. Further, Plaintiff reasonably believes that the fraudulent inquiries have negatively impacted and depressed his credit score.  Plaintiff fears Defendants' conduct has caused irreparable damage to his credit score.

213.   At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

214.   At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

215.   Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from the Defendants, Plaintiff feels a surge of panic each time he receives another

communication from the Defendants. His ongoing stress and anxiety regarding the situation have negatively affected him and his relationships.

216.   The Defendants have had years of notice in the form of federal lawsuits, despite it all, the Defendants failed to take any better steps to protect the Plaintiff here.

217.   The internal policies and procedures of the Credit Bureau Defendants do not appear to place any value on their obligations under the FCRA to report credit entries accurately, to reinvestigate carefully when notified of consumer disputes, and to avoid giving third parties access to consumers' reports without authorization or permissible purpose.

218.   As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the data furnishers, like Defendant Credit One here, despite numerous court decisions admonishing this practice. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated

procedures that make only superficial inquiries once the consumer has notified it that information is disputed); Gorman v. Experian Info. Sols., Inc., 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

219.   The Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, the Defendants' violations of the FCRA are willful.

220.   Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

221.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; revocation of credit; the expenditure of time and money disputing and trying to remove the inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the inquiries which were the product of identity theft.

222.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and

embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Defendants.

## COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to
### Assure Maximum Possible Accuracy
### (The Credit Bureau Defendants)

223.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

224.   The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

225.   On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

226.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Credit Bureau Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff charged and owed Defendant Credit One for the clearly unauthorized charges made on his account.

227.   Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the

preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

228.  Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

229.  Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

230.  As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; revocation of credit; the expenditure of time and money disputing and trying to remove the inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the inquiries which were the product of identity theft.

231.  Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration,

shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

232.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

233.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (The Credit Bureau Defendants)

234.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

235.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day limitation for the completion of such an investigation. Id.

44/53

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

236.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

237.   Plaintiff disputed the inaccurate information with the Credit Bureau Defendants and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, the unauthorized charges made on his Credit One Credit Card Account being made part of his total balance furnished by Defendant Credit One that were the product of fraud and identity theft.

238.   Plaintiff disputed the identity theft information to the Credit Bureau Defendants, to no avail.

239.   Plaintiff supported his disputes with a copy his FTC ID Theft Report.

240.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, the Credit Bureau Defendants conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

241.   Plaintiff expended resources in the form of time and money to repeatedly dispute the information that was the product of fraud and identity theft

with the Credit Bureau Defendants.

242.   The Credit Bureau Defendants' refusal to remove the information that was the product of fraud and identity theft lent credibility to the disputed debt and suggested to all third parties that Plaintiff did in fact owe that debt.

243.   Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

244.   Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

245.   Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was

inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

246.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; revocation of credit; the expenditure of time and money disputing and trying to remove the inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the inquiries which were the product of identity theft.

247.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

248.   The Credit Bureau Defendants' conduct, actions, and inactions was willful, rendering them liable for actual or statutory damages, and punitive damages

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
**Complaint and Demand for Jury Trial**

in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

249.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (The Credit Bureau Defendants)

250.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

251.    Plaintiff repeatedly submitted ample evidence of the fact that he was an identity theft victim.  Plaintiff further supported the fact that he was an identity theft victim by providing a copy of his  FTC ID Theft Report.

252.    The Credit Bureau Defendants should have blocked the identity theft information at the outset.

253.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; revocation of credit; the expenditure of time and money disputing

and trying to remove the inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the inquiries which were the product of identity theft.

254.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

255.   Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

256.   Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

257.   Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

258.   The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages

in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

259.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation of the Disputed Information and Review of all Relevant Information Provided by the Consumer (Defendant Credit One Only)**

260.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

261.   Defendant Credit One refused to remove information that was the product of identity theft and fraud – namely the unauthorized charges by a fraudster made on Plaintiff's Credit One Credit Card Account without his permission or consent.

262.   Defendant Credit One violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate

information relating to Plaintiff to the national credit bureaus, including but not limited to the Credit Bureau Defendants; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the Credit Bureau Defendants.

263.   As a result of Defendant Credit One's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; revocation of credit; the expenditure of time and money disputing and trying to remove the inquiries which were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the inquiries which were the product of identity theft.

264.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by Defendant Credit One.

265.   Defendant Credit One's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.   In the

alternative, Defendant Credit One was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

266.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Credit One in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

(a)    WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants: Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b)    An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, *et seq.;*

(c)    An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

//

*Louis Martin V. Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, And Credit One Bank, N.A;*
***Complaint and Demand for Jury Trial***

RESPECTFULLY SUBMITTED this <u>21st</u> day of <u>November</u> 2024,

**CONSUMER ATTORNEYS**

*/s/ Catherine Tillman*
Catherine Tillman, Esq., FL #0057663
CONSUMER ATTORNEYS
8095 N. 85th Way
Scottsdale, AZ 85258
T: (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorneys for Plaintiffs,*
*Louis Martin*

*Louis Martin V. Experian Information*
*Solutions, Inc., Equifax Information*
*Services, LLC, Trans Union LLC, And*
*Credit One Bank, N.A;*
***Complaint and Demand for Jury Trial***