UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LOUIS MARTIN,

        Plaintiff,

    v.

                                   Case No. 2:24-CV-1071-SPC-KCD

EQUIFAX INFORMATION
SERVICES, LLC,  EXPERIAN
INFORMATION SOLUTIONS,
INC.,  TRANS UNION LLC,
CREDIT ONE BANK, N.A.,

        Defendants,

                               /

## ORDER

Before the Court is Experian Information Solutions, Inc.'s Motion to

Compel Arbitration. (Doc. 40.)[1] Plaintiff Louis Martin responded in opposition

(Doc. 41), and Experian replied (Doc. 43). For the reasons below, the motion

is granted, and this dispute is ordered to arbitration.

## I. Background

In this Fair Credit Reporting Act ("FCRA") case, Martin alleges that

Defendants violated the FCRA by "reporting fraudulent charges [that] were

not made by [him] but were the result of . . . identity theft." (Doc. 1 ¶ 20.)

Experian moves to compel arbitration under an agreement between Martin

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have
been omitted in this and later citations.

and its affiliate, ConsumerInfo.com, Inc. ("CIC"), which also does business as Experian Consumer Services ("ECS"). (Doc. 40 at 3). Before initiating this action, Martin enrolled in a credit monitoring service, IdentityWorks, through the CIC/ECS website and agreed to its "Terms of Use," which contain an arbitration provision covering Experian. (*Id.* at 4-5.) Thus, Experian seeks an order compelling arbitration and staying this case until such proceedings conclude. (*Id.* at 17.) Martin responds that Experian has not proven that the parties entered into an arbitration agreement, and alternatively, the agreement lacks mutual assent.

## II. Discussion

When presented with a motion to compel arbitration, a court must assess three factors: (1) whether a valid arbitration agreement exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *See Abellard v. Wells Fargo Bank, N.A.*, No. 19-CV-60099, 2019 WL 2106389, at *2 (S.D. Fla. May 14, 2019). "[I]f the aforementioned criteria are met, the Court is required to issue an order compelling arbitration." *Id.*; *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) ("The court must grant a motion to compel arbitration if it is satisfied that the parties agreed to arbitrate the claims at issue."). "When in doubt, questions of arbitrability should be determined in favor of arbitration."

2

*Farrell v. Aaron's, Inc.*, No. 3:18-CV-01490-J20-JRK, 2019 WL 13262714, at *3 (M.D. Fla. May 16, 2019).

Martin contests the first factor the Court must consider—whether a valid arbitration agreement exists. He attacks the sufficiency of Experian's evidence, namely, declarations from CIC's Director of Operations, Dan Smith. (Docs. 40-1, 43-2.) Martin argues that Smith lacks personal knowledge to establish the existence of an arbitration agreement between the parties.

The burden of proving that an arbitration agreement exists is ultimately Experian's. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1334 (11th Cir. 2016). Using a summary judgment-like standard, the court "may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Id.* at 1333.

A party can object to any material cited to support a fact, including a declaration, if that material "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). To be admissible, a declaration must (1) be "made on personal knowledge," (2) "set out facts that would be admissible in evidence," and (3) "show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Personal knowledge may be proved by a witness's or a declarant's own testimony, or reasonably inferred from his position or the nature of his

participation in the matters to which he swears." *Johnson v. Sw. Recovery Servs. Inc.*, No. 3:22-CV-242-X-BH, 2023 WL 1944127, at *3 (N.D. Tex. Jan. 24, 2023).

In his declarations, Smith testifies that he is the Director of Product Operations for ConsumerInfo.com, Inc. and has been employed by CIC since 2010. (Doc. 40-1 at 1.) As part of his role, Smith must understand "how consumers enroll, the forms they must complete to enroll, as well as the Terms of Use governing such services." (*Id.*) Furthermore, his role requires that he maintain knowledge of: "Experian's electronic databases that store consumer enrollment information, including the webpages a consumer would have encountered to complete their enrollment into IdentityWorks, the personally identifiable information entered when enrolling, which links or buttons the consumer clicked on, and date and time of the consumer's acceptance of the Terms of Use." (*Id.*)

Smith attests to the process Martin underwent to enroll in IdentityWorks, including the webform he filled out, the acceptance button Martin clicked binding him to IdentityWorks' Terms of Use, and the date the transaction was completed. (Doc. 40-1 at 2-4.) Smith explained that before clicking the acceptance button, Martin would have seen a message informing him that it would bind him to the IdentityWorks' Terms of Use. Moreover, the "Terms of Use Agreement" was set-off in blue text, and if clicked, would

display the full terms of the agreement, including the arbitration provision at issue. According to Smith, Martin could not have enrolled in IdentityWorks unless he agreed to the Terms of Service.

Based on Smith's familiarity with IdentityWorks' enrollment process and Experian's databases that store consumer account information, Smith can retrieve a consumer's IdentityWorks membership information when needed. This membership information allows Smith to confirm the date and time of enrollment, the period of the Terms of Use agreed to, and the exact oath the consumer encountered when completing their enrollment in IdentityWorks. Here, using this process, Smith determined that Martin enrolled in IdentityWorks on August 31, 2019, and articulated the different steps Martin would have undertaken to do so (as noted above). (*Id.* at 2-3, Doc. 43-2 at 1-2.)

The Court is satisfied that Smith's declarations are based on personal knowledge and prove the arbitration agreement. Other courts have reached the same conclusion. *See, e.g.*, *Myers v. Experian Info. Sols. Inc.*, No. CV-23-01901-PHX-DJH, 2024 WL 2278398, at *3 (D. Ariz. May 20, 2024) (rejecting argument that a declaration provided by Smith was inadmissible and finding "that Mr. Smith's Declaration meets the minimum standards for consideration under Federal Rule of Civil Procedure 56(c)."); *Pecoraro v. Synovus Bank*, No. 23-CV-80789, 2024 WL 167391, at *1 (S.D. Fla. Jan. 16,

2024) ("The Williams Affidavit is competent evidence to show that Plaintiff accepted the Terms of Service Agreements—and the relevant arbitration clause—that were in effect when he enrolled in CreditWorks.").

Martin offers his own affidavit, which claims he "does not recall" signing the agreement. (Doc. 41-1.) But this does not create a factual issue to prevent arbitration. *See, e.g.*, *Garcia v. Harmony Healthcare, LLC*, No. 8:20-CV-1065-WFJ-AAS, 2021 WL 1610093, at *4 (M.D. Fla. Apr. 26, 2021) ("[G]eneral denials based on a lack of memory will not rebut a signed written agreement."); *Mancilla v. ABM Indus., Inc.*, No. 20 CIV. 1330 (KPF), 2020 WL 4432122, at *7 (S.D.N.Y. July 29, 2020) ("And while she does contend that 'she does not recall seeing' the Mutual Arbitration Agreement ..., this is insufficient to create a genuine issue of material fact as to whether the parties entered into an arbitration agreement."). And more importantly, the record undermines Martin's claim. The personal information for the IdentityWorks member assigned to Martin apparently matches his address, phone number, email address, social security number, and date of birth, evidencing that he was the one who opened the account. (Docs. 43 at 2-3, 43-2.) And after enrolling, Martin used the service. Experian regularly emailed Martin with notifications, many of which he opened according to Experian's records. (*Id.*) Experian has provided all of this evidence, and it stands unrebutted.

At bottom, the Court finds that the statements within Smith's declarations constitute admissible evidence under Rule 56 and show that Martin entered into a valid arbitration agreement. Martin offers no competent evidence to show a genuine issue of material fact related to his consent to arbitration. His "general denials based on a lack of memory" are not enough. *Garcia*, 2021 WL 1610093, at *4. Further, the arbitration agreement in the Terms of Use is straightforward: "ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement," including those arising under the FCRA.[2] (Doc. 40-1 at 32-33.) With no claim of waiver, "the Court is required to issue an order compelling arbitration." *Abellard*, 2019 WL 2106389, at *2.

Martin alternatively argues that the sign-up process described by Experian is "facially insufficient for a showing of mutual assent, a fundamental requirement for finding contract formation." (Doc. 41 at 2, 16-20.) This argument also fails. "In Florida and the federal circuits ... clickwrap agreements are valid and enforceable contracts." *Salco Distributors, LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006); *see also Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752, 2020 WL 5742189, at *7 (S.D. Fla. May 13, 2020) ("[T]he statement regarding the Terms and Conditions is located directly above the Continue button that

---

[2] Martin does not argue that his claims fall outside the arbitration clause.

7

the user must click to proceed with using the Website. Thus, it is highly likely that the user would see the statement regarding the Terms and Conditions."). The Court declines to break-step with this well-settled line of authority.

Finally, Experian seeks a stay while arbitration proceeds. "The Eleventh Circuit has held that the proper course is to stay the proceedings rather than dismiss the action" during arbitration. *Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*, No. 3:13-CV-576-J-34JRK, 2014 WL 757942, at \*11 (M.D. Fla. Feb. 26, 2014). Accordingly, the Court will follow suit.

### III. Conclusion

The Court finds Smith's declaration admissible and concludes that Experian carried its burden of showing Martin's assent to the Terms of Use, including the arbitration clause. Accordingly, it is **ORDERED**:[3]

1. Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration (Doc. 40) is **GRANTED**.

2. If no objections to this Order are filed within the time allotted under Fed. R. Civ. P. 72, the parties are directed to arbitrate this dispute promptly in accordance with their agreement.

---

[3] Because a motion to compel arbitration does not address the merits of the dispute but merely changes the forum, it is a non-dispositive matter that does not require a report and recommendation. *See Soriano v. Experian Info. Sols., Inc.*, No. 2:22-CV-197-SPC-KCD, 2022 WL 17551786, at \*1 (M.D. Fla. Dec. 9, 2022); *Moore v. Chuck Stevens Auto., Inc.*, No. CA 1:12-00663-KD-C, 2013 WL 627232, at \*1 (S.D. Ala. Feb. 20, 2013).

3. The parties must notify the Court within seven days of the arbitration concluding. The parties are otherwise directed to file a joint report on the status of arbitration on **June 2, 2025**, and every ninety  days after until arbitration concludes.

4. Because this case remains open as to other Defendants, the Clerk must **not** add a stay flag to the docket.

   **ORDERED** in Fort Myers, Florida on March 5, 2025.

Kyle C. Dudek
United States Magistrate Judge